Bouldin, J.,
delivered the opinion of the court.
In this case there was a general demurrer to the bill by Childress, and a demurrer by Hartsook also, setting forth special cause of demurrer; and the same parties filed also separate answers. The plaintiff below replied generally to the answers, and joined in the demurrers.
On the hearing the court below overruled the demurrers, and entered a joint decree against the defendants, James C. Childress, James W. Mason, and Daniel J. Hartsook, for the debt claimed in the bill, viz: Four hundred and fifty dollars, with six per eent. interest from the 1st day of July 1862, subject to a credit of thirty-three dollars and eighty-five cents, with interest from May 13, 1857.
From this decree Hartsook and Childress have appealed to this court; and the first question which presents itself, although not argued by counsel on either •side, is, were the demurrers properly overruled ?
The demurrers were, as we have seen, separately filed; and as Childress is charged as principal defendant we will consider the case only as to him; for it is only through him that the others can be charged, they being his sureties. His demurrer was general, and necessarily raises the question, whether the matters stated in the bill, as therein set forth, make a case for the interposi *804 tion of a court of equity. Does it set forth an equitable-'i J a demand ?
Let us briefly state it, in the words of the bill, which, after stating that Childress had qualified as administra^01. 0f Brady, with Hartsook and Mason as his sureties, sets forth the claim of the plaintiff below as follows: “ The said Childress, as such administrator, sold your orator ten shares of the stock of the bank of Scottsville, for the sum of one thousand one hundred and two dollars and fifty cents; said sale having been made in May 1857. At the time of said sale, the bank stock was subject to the payment of two stock notes given said bank by James Brady, each for four hundred dollars, one due-12 and 15 March, 1857, and the other due 9 and 12 June 1857. Mr. Childress, the administrator, assured your orator, that if he would pay the full amount of the purchase money for said ten shares of stock, that he (the said Childress) would, as administrator, pay off the said two stock notes. Accordingly, your orator relying upon this express promise and agreement of Mr. Childress, as-administrator as aforesaid, settled with Mr. Childress as such administrator, the full amount of the purchase* money aforesaid, to wit: $1,102 50, as will more fully appear by reference to the receipt given to your orator, by said administrator Childress, herewith exhibited, marked (A.) Mr. Childress did, in pursuance of his promise. pay off the first stock note and a portion of the second; but the balance of the second stock note was paid off to the bank of Scottsville, by the application*of' the following dividends on the said ten shares of stock,” (giving a list of dividends amounting to $450.) “ Mr. Childress suffered these dividends to be so applied, notwithstanding these dividends having accrued after your orator’s purchase as aforesaid, belonged to your orator,. *805 and notwithstanding his promise to pay both of the stock notes out of the assets of the testator’s estate.”
Such, in the words of the bill, is the character of plaintiff's claim; and conceding for the present, that the contract set forth is one which it was entirely lawful and proper for the administrator as such to enter into, (which, however, we are far from admitting,) the question arises, does the contract as thus set forth confer on the plaintiff below equitable rights only, or is the demand a purely legal one, not cognizable in a court of equity ? It is based on a contract by which the administrator, in consideration of a payment to him, by Morris, of a sum of money, the larger portion of which both Morris and the administrator knew belonged in effect to the bank of Scottsville, expressly promised and agreed with Morris to pay the bank what was thus due to it. And the bill goes on to allege, “ that notwithstanding his promise to pay ” the stock notes aforesaid, he did not do so, but allowed a portion thereof to fall on the plaintiff Morris. The words used in the bill are the same in effect, and in part are identically the same which would have been used in a declaration in assumpsit against Childress on the contract set out; and in the striking language of Judge Baldwin in the case of Armstrong v. Hunton’s, 1 Rob. R. p. 323, altered only to suit the facts of this case, we say, “If this be not an action of” (assumpsit) “ brought in a court of chancery, it must be, because the plaintiff'has asserted his demand by a bill instead of a ■declaration.” The demand, if lawful, is plainly cognizable by a court of-law in an action of assumpsit against ■Childress. It is true that in this case there is a colorable prayer for a discovery, but with no allegations showing its “ materiality or necessity,” and the facts show that it was wholly unnecessary. The proof of every fact as to which a discovery was asked, as the record shows, was *806 easily attainable in a court of law. The prayer, therefore, was merely colorable. In the case of Armstrong v. Huntons, Judge Baldwin, with the concurrence of all the judges, said, “ it is perfectly clear as a general rule,, that in a bill to substitute an equitable for a legal forum, a prayer for a discovery, without any averment, showing its materiality or necessity, is naught. If this court has tolerated a departure from this rule in regard to slave property, (Gregory's adm’r v. Marks' adm’r, 1 Rand. 355,) it has been where the necessity for a discovery has been supposed to be incidental, at least prima facie, to the nature of the demand; or where the suit is to recover a stock of slaves after a considerable lapse of time, and there has been such an increase as would raise a fair presumption, that the plaintiff is ignorant of their names, ages and residence. But even under such circumstances, if it may be inferred from the statements in the bill, or the evidence in the cause, that no such difficulty in point of fact exists, a court of equity will not take cognizance of the cause, unless there be some ground for the exercise of its equitable jurisdiction.”
The whole case is singularly apposite to that before us. The facts of the case show that no necessity for a discovery of the proofs called for “in point of fact exists;” and in the absence of these, it may fairly be-interred from the bill itself, (in which there is no averment of its materiality or necessity,) that such necessity does not exist. We conclude with the concluding sentence of the learned judge in the case cited, altered only to suit the facts of this ease, that “ to enter" tain jurisdiction of the cause before us would be to obliterate the line of demarcation between the two tribunals,” so far as parol contracts are concerned, “ and to permit actions of ” assumpsit, “ to be prosecuted indifferently in a court of law and a court of equity at the elec *807 tion of the plaintiff?’ "We are of opinion, therefore, conceding the contract to be binding on the administrator as such, that a court of equity had no jurisdiction of' the claim; and the demurrer should have been sustained.
As this conclusion must necessarily result in a reversal of the decree and the dismissal of the bill, it is perhaps unnecessary to consider any other question in the cause. But to save further litigation it may be proper to add, that were the case proper for the jurisdiction of a court of equity, our decision would be the same, because, we are of opinion, that as Morris and Childress the adm’r both knew that the one was paying and the other receiving a fund not properly payable to the administrator, it was not competent for the administrator to make any agreement with Morris in relation to that fund, which would cast a burden on the estate of Brady, or on his own sureties in his administration bond. He could bind himself personally but not his sureties. On both grounds the demurrer should have been sustained, and the bill dismissed. The decree of the Circuit court must be reversed, and a decree entered sustaining the demurrers and dismissing the bill with costs to the appellants in both courts.
The decree was as follows.
The court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Circuit court erred in overruling, instead of sustaining, the demurrers to the bill: 1st, because the claim asserted thereby as'therein set forth, presented a case exclusively cognizable in a court of law, of which a court of equity had no juris *808 diction. 2d, because the agreement set forth in the bill was not one that the administrator Childress had authority to make, as administrator, so as to bind the assets of his testator’s estate. It is therefore decreed and ordered that the decree of the Circuit court of the 15th day of October 1870, be reversed and annulled, and that the appellee Morris do pay to the appellants their costs by them expended in the prosecution of their appeal in this court.
And this court proceeding to enter such decree as should have been entered in the Circuit court, doth further decree and order, that the demurrers of the defendants in that court, Childress and Hartsook, be sustained and the bill dismissed; and that the plaintiff Morris do pay to the defendants in the Circuit court, their costs about their defence in that behalf expended.
Decree reversed.